O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CONNIE M. HERNANDEZ-CORTINA, | ) | Case No. EDCV 18-01579 DDP (SPx) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART AND DENYING MOTION IN PART** |
| v. | ) | |
| | ) | |
| COUNTY OF RIVERSIDE, ET AL., | ) | [Dkt. 20] |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Presently before the court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). Having considered the submissions of the parties and heard oral argument, the court grants the motion in part, denies the motion in part, and adopts the following Order.

**I.  Background**

On July 7, 2017, Riverside County Sheriff's Office deputies took Angel Cortina ("Cortina") into custody and detained him at the Colorado River Station in Blythe, California. (FAC ¶ 23.) While Cortina was detained in a closed cell, deputies, with the permission of supervisors, deployed a canister of "clear-out gas" into the cell. (FAC ¶¶ 25-26.) Soon after, deputies deployed a second canister of gas into the cell. (FAC ¶ 27.) After deploying

the second canister, deputies removed Cortina from the cell.  (Id. ¶ 28.)  Cortina showed "obvious signs of respiratory distress and physical impairment caused by the noxious gas fumes."  (Id. ¶ 29.)  Sheriff's personnel did not provide Cortina with the medical treatment or decontamination measures required by jail policies and the gas manufacturers' specifications.  (Id.)

Cortina was then transported from the Colorado River Station to Robert Presley Detention Center ("RPDC") in Riverside, California.  (FAC ¶ 30.)  Although transport took several hours, Cortina was not provided with any medical care or decontamination measures during transport.  (Id. ¶ 31.)  Upon his arrival at RPDC, Cortina was "placed in a holding cell without having undergone appropriate screening."  (Id. ¶ 32.)  No RPDC authorities were notified that Cortina had been exposed to gas.  (Id. ¶ 33.)  At some point, Cortina was found non-responsive in his cell, with blood coming out of his mouth and with no pulse.  (Id. ¶ 35.)  Cortina was transported to Riverside Community Hospital, where he arrived with a lacerated scalp, hypoglycemia, and a large amount of blood coming from his mouth.  (Id. ¶¶ 36-37.)  He was pronounced dead 19 minutes after arriving at the hospital from RPDC.  (Id. ¶ 38.)

Plaintiff Connie M. Hernandez-Cortina, Cortina's wife, filed the instant action as an individual and as Cortina's successor in interest.  Plaintiff alleges twelve causes of action, including civil rights claims such as excessive force and deliberate indifference to serious medical needs, state law negligence, and other claims.  Defendants now move to dismiss six of the FAC's twelve causes of action.

2

**II. Legal Standard**

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 1950. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

    A.   Third Claim for Deliberate Indifference to Medical Needs

Plaintiff's Third Claim alleges, pursuant to 42 U.S.C. § 1983, that unnamed individual Defendants violated Cortina's Fourteenth Amendment right to medical care. (FAC ¶ 65.) Defendants contend that Plaintiff alleges only that the unnamed Defendants were negligent, rather than deliberately indifferent, and that there is no alleged link between any Defendant's action and the damages suffered by Cortina.

Fourteenth Amendment claims brought by pretrial detainees for inadequate medical case must satisfy an objective deliberate indifference standard. See Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018). To meet that standard, a plaintiff must show that "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." Id. A showing of objective unreasonableness, for purposes of the third element, requires "more than negligence but less than subjective intent-something akin to reckless disregard." Id. Whether a defendant's conduct rises to the level of objective unreasonableness depends on the facts of each particular case. Id.

Defendants argue that the FAC fails to allege deliberate indifference because it only alleges negligent conduct, or more specifically, inaction. This argument is puzzling. The FAC alleges that the unnamed defendants unnecessarily deployed two cans of gas into Cortina's cell in violation of established County of Riverside policies. (FAC ¶ 64.) Plaintiff further alleges that the unnamed defendants were trained in County policies, guidelines, and procedures requiring that inmates who are exposed to clear-out gas be provided with immediate medial attention, including decontamination measures intended to facilitate breathing and reduce physical pain resulting from gas exposure. (Id.) Notwithstanding this training, Plaintiff alleges, defendants failed to provide Cortina with medical treatment or gas decontamination, even though Cortina "was in respiratory distress and had other obvious signs of physical impairment from breathing" at the time he was removed from his cell in Blythe, throughout his hours-long transport to Riverside, and upon his arrival at RPDC. (Id. ¶¶ 29-32, 34, 64.)

Defendants nevertheless contend that these allegations "sound in negligence" because other portions of the Third Claim allege that defendants "*failed* to follow basic, universally accepted emergency medical protocols; *failed* to follow Riverside County Sheriff standard emergency medical procedures and policies; *failed* to provide adequate observation and medical intervention for Angel Cortina's serious medical needs; seriously aggravated Angel Cortina's medical condition *by not administering decontamination measures* and delayed in providing appropriate care and treatment of Angel Cortina's injuries." (Reply at 3:12-18 (quoting and

5

emphasizing portions of FAC ¶ 68).)  It is well established, however, even under a more stringent subjective intent standard, that a plaintiff can prove deliberate indifference by showing a "purposeful act <u>or failure to respond</u> to a prisoner's pain or possible medical need . . . ." <u>Singanonh v. Rodriquez</u>, No. 118CV00590EPGPC, 2018 WL 5603600, at *4 (E.D. Cal. Oct. 29, 2018) (quoting <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006)(emphasis added)); <u>see also</u>, <u>Coleman v. Snohomish Cty.</u>, No. C18-151-JCC-JPD, 2018 WL 6185551, at *4 (W.D. Wash. Oct. 19, 2018); <u>cf</u>. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105, (1976) ("[I]n the medical context, an <u>inadvertent</u> failure to provide adequate medical care cannot be said to constitute" deliberate indifference." (emphasis added)); <u>Gordon</u>, 888 F.3d at 1124 ("[W]e have long analyzed claims that government officials <u>failed</u> to address pretrial detainees' medical needs using the same standard as cases alleging that officials failed to protect pretrial detainees in some other way." (emphasis added)).  Thus, it is irrelevant whether a defendant is alleged to have been deliberately indifferent through action or inaction.  Defendants' suggestion that alleged omissions or failures to act are, by definition, no more than negligent has no merit.

The pertinent question in a Fourteenth Amendment case of this nature is whether a defendant's conduct, either in acting or in failing to act, was objectively unreasonable. <u>Gordon</u>, 888 F.3d at 1124.  Although a failure to act might conceivably be merely negligent, and therefore insufficient to sustain a deliberate indifference claim, so too might a failure to act be reckless, or even intentional.  Here, Plaintiff alleges that the unnamed

6

defendants violated County policy by improperly deploying clear-out gas into Cortina's cell and then, despite having been trained to provide inmates with medical attention and decontamination measures following any exposure to clear-out gas, did not provide Cortina with such treatment, even though he showed "obvious" signs of respiratory distress over the several hours it took to extract him from his cell in Blythe and transport him to Riverside.[1] These facts, construed in the light most favorable to Plaintiff, undoubtedly give rise to a plausible claim that the unnamed defendants were at least reckless in their disregard of Cortina's medical needs.

B. Section 1983 Claim for Wrongful Death

Plaintiff's Fourth Claim alleges a "wrongful death" claim under 42 U.S.C. § 1983, while her Tenth Claim alleges wrongful death pursuant to California Code of Civil Procedure § 377.60. Defendants seek to dismiss the former, but not the latter.

Survivors of a person killed as a result of a police officer's use of excessive force may bring a Fourth Amendment action under 42 U.S.C. § 1983 if the relevant's state's laws authorizes such an action. Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 369 (9th Cir. 1998); 42 U.S.C. § 1988(a). Although some courts have described such cases as "wrongful death" cases, the term more often applies to state claims brought by relatives of the decedent

---

[1] These allegations are difficult to square with Defendants' brief alternative arguments that (1) the FAC does not demonstrate any link between the unnamed Defendants' conduct and Cortina's injuries or (2) allege that any Defendant participated in the deprivation of Cortina's rights. Defendants are free to raise such arguments, if appropriate, upon Plaintiff's identification of the Doe defendants.

7

to recover for their own injuries. Estate of Lopez ex rel. Lopez v. Torres, 105 F. Supp. 3d 1148, 1159 n4 (S.D. Cal. 2015); see also Herd v. Cty. of San Bernardino, 311 F. Supp. 3d 1157, 1164 (C.D. Cal. 2018); Neuroth v. Mendocino Cty., No. 15-CV-03226-NJV, 2016 WL 379806, at *4 (N.D. Cal. Jan. 29, 2016). So understood, "wrongful death" actions by a surviving relative cannot be brought under Section 1983, as constitutional rights cannot be vicariously asserted. Herd, 311 F.3d at 1165. Only when a plaintiff acts in a survivor capacity, where the decedent would otherwise have been able to assert constitutional claims for himself, may a plaintiff bring a Section 1983 claim authorized by state law.[2] Id.

Here, Plaintiff's First Claim for excessive force under Section 1983 is a permissible survivor claim, which Defendants do not seek to dismiss. Because, however, Plaintiff's Fourth Claim for wrongful death can only be maintained under Section 1983 (as opposed to state law) as an excessive force claim, it is duplicative of Plaintiff's First Claim. Plaintiff's Fourth Claim is therefore dismissed, with prejudice.

C. Fifth Claim for Right of Association

---

[2] A plaintiff may also, of course, bring a Section 1983 claim for a deprivation of her own constitutional rights. See, e.g., Gonzalez v. City of Garden Grove, No. CV051506CASJTLX, 2006 WL 8434405, at *5 (C.D. Cal. Aug. 22, 2006) (permitting Fourteenth Amendment familial association claim by surviving parents while dismissing Fourth Amendment claim because the plaintiffs were not the decedent's survivors). Crumpton v. Gates, 947 F.2d 1418, 1421 (9th. Cir. 1991), cited by Plaintiff, involved such a claim. The Ninth Circuit's discussion of whether or when a Fourteenth Amendment-based Section 1983 claim accrued to an unborn fetus, however, has no bearing on whether a wrongful death claim can be brought pursuant to Section 1983. See Crumpton, 947 F.3d at 1419 ("Crumpton alleges that the killing of his father . . . violated his own constitutional rights.") (emphasis added).

8

Plaintiff brings a Fifth Claim for "Right of Association" in her own individual capacity. Plaintiff bases her claim on her interest in her relationship with her spouse under both the First and Fourteenth Amendments. (FAC ¶ 80.) Defendants do not appear to dispute that Plaintiff can bring a Fourteenth Amendment claim for loss of familial relationship. See, e.g., Estate of Lopez, 105 F.Supp.3d at 1160. Defendants seek dismissal, however, of Plaintiff's Fifth Claim insofar as it is based upon the First Amendment.

Defendants rely on Arres v. City of Fresno, No. CV F 10-1628 LJO SMS, 2011 WL 284971, at *15 (E.D. Cal. Jan. 26, 2011). In Arres, as here, the plaintiffs brought Section 1983 familial relationship claims under the First and Fourteenth Amendments. Arres, 2011 WL 284971 at *15-16.[3] Relying upon a Sixth Circuit case involving a public housing authority's trespassing rules, the Arres court concluded that the First Amendment protects only "associational interests related to speech and petition," and that familial relationships are of a different nature. Id. (citing Thompson v. Ashe, 250 F.3d 399, 407, n. 1 (6th Cir. 2001). Thus, the Arres court concluded, the plaintiffs could only bring a familial interest claim under the Fourteenth Amendment, not the First Amendment. Id. at 16.

This Court respectfully disagrees. As Defendants themselves appear to acknowledge, the Ninth Circuit has held that the First Amendment does protect individuals from "unwarranted interference" with family relationships. Keates v. Koile, 883 F.3d 1228, 1236

---

[3] The Arres plaintiffs also brought a familial relationship claim under the Fourth Amendment. Arres, 2011 WL 284971 at *16.

9

(9th Cir. 2018) ("[W]e have held that claims under both the First and Fourteenth Amendment for unwarranted interference with the right to familial association could survive a motion to dismiss."); Lee v. City of Los Angeles, 250 F.3d 668, 685-6 (9th Cir. 2001). Although Defendants contend that the FAC does not sufficiently allege such "unwarranted interference," the argument is not well developed. Furthermore, courts have allowed familial association claims under the First Amendment in similar excessive force cases resulting in death. See, e.g. Dela Torre v. City of Salinas, No. C-09-00626 RMW, 2010 WL 3743762, at *4 (N.D. Cal. Sept. 17, 2010).

**D. Claims Six and Seven**

Claims Six and Seven allege Section 1983 claims against Defendant County of Riverside, as well against Defendants Sheriff Stanley Sniff, Undersheriff William Di Yorio, Corrections Assistant Sheriff Jerry Gutierrez, and Captains Robert Peebles and Matthew Jiminez (collectively, excluding the County, the "Supervisor Defendants") for failure to train, supervise, and discipline. The FAC's Eighth Claim, which Defendants do not seek to dismiss, also alleges a Monell claim against the County. Defendants allege that the Sixth and Seventh claims do not sufficiently allege claims against the Supervisor Defendants in their individual capacities and, to the extent the claims are alleged against the Supervisor Defendants in their official capacities, they are duplicative of the claims alleged against the County.

A supervisory defendant may be held liable under Section 1983 if he or she is personally involved in the constitutional violation or if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.

10

Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011). Plaintiff concedes that the Supervisor Defendants were not personally involved in any violation of Cortina's rights. (Opposition at 13.) Plaintiff contends, instead, that Claims Six and Seven are premised upon the "causal connection between [the Supervisor Defendants'] conduct and the deprivation." (Opp. at 13:5.) Contrary to Defendants' characterization, however, Plaintiff's emphasis on causal connections rather than personal involvement is not an admission that Claims Six and Seven are alleged against the Supervisor Defendants in their official capacities. (Reply at 7-8.) "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr, 652 F.3d at 1208 (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)).

A plaintiff can demonstrate the requisite causal connection between a supervisory defendant's individual actions and a constitutional violation by showing that the supervisor set in motion a series of acts by others or "knowingly refus[ed] to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." Starr, 652 F.3d at 1207-08 (quoting Dubner v. City & Cnty. of San Francisco, 266 F.3d 959, 968 (9th Cir.2001) (alterations omitted)). Plaintiff asserts that this standard is met by the FAC's allegations that the Supervisor Defendants were aware of a 2016 Consent Decree requiring the County to "implement

11

remedial measures to address the failure to provide constitutionally adequate mental health and medical care to prisoners housed in County of Riverside jails [,]" and mandating that "all health care staff shall provide community standard of care in their respective roles; that emergency procedures are to be provided 'immediately'; and that in the event of a medical emergency, [] inmate[s] will be seen by health care staff at an RN level or higher 'as soon as possible'". (FAC ¶ 101.)

Plaintiff argues that, because the Consent Decree put the Supervisory Defendants on notice that constitutional violations were occurring in Riverside County Jails, Cortina's subsequent mistreatment constituted an "obvious failure to take the corrected action [that] establishes the necessary causal link between the affirmative acts and omissions of the [Supervisor Defendants] and the death of Angel Cortina." (Opp. at 14-15.) The court disagrees. The FAC includes no allegations that any Supervisory Defendant took any action to set in motion the unnamed Defendants' acts. Even if the Supervisory Defendants had notice of a pattern of denial of medical care in the Riverside County Jails, the FAC alleges no particular acts of which the Supervisor Defendants were, or should have been, aware, let alone particular acts that the Supervisor Defendants refused to terminate. To the extent Plaintiff's claims are grounded in a failure of training or disciplinary policy in the wake of the Consent Decree, those claims are duplicative of Plaintiff's Monell claim, which Defendants do not seek to dismiss. Accordingly, Plaintiff's Sixth and Seventh

Claims against the Supervisor Defendants are dismissed, with leave to amend.[4]

   E.   Negligence

The FAC alleges an Eleventh Claim for "state law negligence" against the County and the Supervisor Defendants. Defendants contend that Plaintiff has identified no statutory basis for the County's tort liability. "Under California law a public entity is not liable under a claim brought by a plaintiff unless liability is provided for by statute or required by the state or federal constitution." Garcia v. City of Merced, 637 F. Supp. 2d 731, 746 (E.D. Cal. 2008). Plaintiff's Opposition points to California Government Code Section 845.6, which provides that "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov. Code § 845.6 (emphasis added). Defendants' reply does not address Section 845.6, and the court deems the argument abandoned with respect to the County.

Petitioner's theory of liability is less clear with respect to the Supervisor Defendants. "[S]upervisory personnel whose personal involvement is not alleged may not be held responsible for the acts of their subordinates under California law." Milton v. Nelson, 527 F.2d 1158, 1159 (9th Cir. 1975); Matysik v. Cty. of Santa Clara, No. 16-CV-06223-LHK, 2017 WL 513145, at *4 (N.D. Cal. Feb. 8,

---

[4] Plaintiff also brings the Sixth and Seventh Claims against the County. Such claims are dismissed with prejudice as duplicative of Plaintiff's Eighth, Monell Claim.

13

2017); Cal. Gov. Code § 820.8.  Although a public employee is liable for his own negligent acts, Plaintiff's opposition argues that the Supervisor Defendants are liable for negligence only due to their failure to train, supervise, and discipline the Doe Defendants, and not as a result of any personal involvement in Cortina's detention.[5]  (Opp. at 16:10-16.)  Plaintiff's negligence claims against the Supervisor Defendants are therefore dismissed, with leave to amend.

    F.   California Civil Code Section 52.1

Lastly, Defendants argue that Plaintiff may not bring a claim under California Civil Code Section 52.1 in her own individual capacity.  Plaintiff concedes that she can bring Claim Twelve only on behalf of Cortina's estate, and not as an individual.  Plaintiff's individual Bane Act claim is therefore dismissed, with prejudice.

**IV.  Conclusion**

For the reasons stated above, Defendants' Motion is GRANTED in part and DENIED in part.  Claim Four is dismissed with prejudice, as is Claim Twelve, insofar as it is brought in Plaintiff's individual capacity.  Claims Six and Seven are dismissed, with leave to amend with respect to the Supervisor Defendants and with

---

[5] The FAC itself does allege that the Supervisor Defendants personally used excessive force on Cortina and denied him medical care.  (FAC ¶ 139.)  Given Plaintiff's arguments, however, including (1) the concession, discussed above, that the Supervisor Defendants were not personally involved and (2) Plaintiff's contention that "[i]t is alleged in the FAC that defendants DOES 1 – 100 failed to provide medical care to Angel Cortina[,]" with no mention of the Supervisor Defendants, that the Eleventh Claim erroneously and inadvertently identifies the Supervisor Defendants as having been personally involved.  (Opp. at 16 (emphasis added.))

14

prejudice with respect to the County.  Claim Eleven is dismissed only with respect to the Supervisor Defendants, with leave to amend.  Regardless whether Plaintiff wishes to amend the dismissed claims, Plaintiff shall file a Second Amended Complaint in accordance with this Order within fourteen days of the date of this Order.

IT IS SO ORDERED.


Dated: January 30, 2019

DEAN D. PREGERSON
United States District Judge